Town of Burlington *vs.* John J. Twining.

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued March 3d—decided May 10th, 1932.

*Robert E. Taft,* for the appellant (defendant).

*Edward J. Myers,* for the appellee (plaintiff).

Haines, J. The plaintiff alleges that it is the owner of a tract of land on the north side of the old Litchfield Turnpike, so-called, in the plaintiff town, used for school purposes, and that it has been so used for more than one hundred years. Abutting this so-called school tract on the north is the farm of the defendant. The

defendant's dwelling and farm buildings face northerly on a State highway, and his property is bounded on the west by J. A. Reeve. From the west side of the defendant's barn and extending south toward the Litchfield Turnpike, the division line between the defendant and Reeve extends to a point at or near the west end of the school tract. The exact southern terminus of this westerly bound is the point over which differences between the plaintiff and the defendant have arisen. The defendant has driven his cattle from what may be called this southwest corner of this farm, through an opening in the fence onto the Litchfield Turnpike, for the purpose of reaching a pasture which lies to the south of the Turnpike, and the plaintiff claims that in so doing he passed over the west end of the school tract. The defendant insists that his line runs to the Turnpike and that in driving his cattle onto the Turnpike he passed directly onto it from his own land and did not pass over any land owned by the plaintiff. The southern terminus of the defendant's west line as indicated on a map in evidence, marks the east end of a section of an old stone wall which extends from that point a considerable distance west. At some distance south of the present traveled portion of the Turnpike at two points, there remain parts of an old stone wall. If the stone wall at the southern terminus of the defendant's west line marked the northern boundary of the Turnpike, then the defendant's contention that he was bounded south by the Turnpike was obviously sound. The trial court found that the Turnpike as originally laid out was sixty-six feet wide at the point in question, and that there had been an encroachment upon the highway during the course of years and there is now but fifty feet between these walls and that it is impossible to determine with exactness what the bounds of the

Turnpike as laid out, were. The present used portion of the original layout is only fourteen to sixteen feet wide. It was found impossible from the evidence to determine the exact boundaries of the school tract, and the plaintiff was unable to establish a record title to the tract. In attempting to locate the defendant's southern boundary line, the court had before it, in addition to oral evidence of old residents and others, many title deeds, an ancient survey made in 1801, a map drawn to a scale, several photographs and other pieces of evidence. It was found that many of the deeds in defendant's chain of title subsequent to the erection of the schoolhouse more than a century before, were inconsistent and irreconcilable. Some of these conveyances give the school tract and the highway as the southern boundary, while others fail to refer in any way to the school tract as part of the southern boundary, while those from March 10th, 1910, to the time of the trial fail to give the Turnpike as part of the southern boundary and to refer to the school tract as that boundary. The defendant's immediate predecessor in title, Frank T. Stone, deeded the farm to the defendant by warranty deed (Exhibit G) dated April 21st, 1923, describing the southern boundary as the "land of John A. Reeve and Town of Burlington (Schoolhouse Plot)," being the same premises conveyed to the grantor by John A. Reeve November 8th, 1910. The last named deed (Exhibit I) did not put the southern line upon the highway. On April 21st, 1923, the defendant mortgaged the property (Exhibit H) to Charles Boyle, describing the southern boundary as it was described in the deed he received from Stone. There have since been no further conveyances.

The trial court found that there is an existing fence between the school tract and the defendant and that

for forty or fifty years prior to its erection there had been some sort of a fence on approximately the same line as the present one, some of the fences having a gate at the extreme west end and some having none. Without objection by the town, people had passed on foot to and from the highway through this gate or corner of the fence, but no cattle had been driven across at this point by permission of the plaintiff. It was also found that on the extreme west end of the school tract, there was and had been for several years, a flagpole and flower garden, both used as a part of the school property and in the possession of the plaintiff, and that the extension of the defendant's western boundary southerly to the present limits of the highway would cut through that portion of the school tract occupied by the flagpole and flower garden.

The trial court properly recognized a legal presumption in holding prima facie that the possession by the plaintiff of the schoolhouse tract, including the portion upon which the flagpole and flower garden are located, was legally acquired. The inquiry as to the title of the plaintiff thereto, though an issue in the pleadings, was only incidental to the main question whether the defendant had interfered with the plaintiff's right of possession. We are satisfied from an examination of the requested changes in the finding and the relevant evidence, that the court was justified in its conclusion of fact that the plaintiff did have the possession of the entire tract including the portion upon which the flagpole and flower garden were situated. We discover no permissible changes in the finding which would invalidate this result.

This is an action of trespass for the wrongful invasion by the defendant of the possessory rights of the plaintiff in this tract of land. *Avery* v. *Spicer,* 90 Conn. 576, 579, 581, 98 Atl. 135; *Milardo* v. *Branci-*

*forte,* 109 Conn. 693, 695, 145 Atl. 573. It is a well recognized rule of law that in an action of trespass, the possession of the land by the plaintiff, even though recent, is sufficient to support the action unless the defendant can show a superior right. *Mallet* v. *White,* 52 Conn. 50, 51; *Brown* v. *Wheeler,* 17 Conn. 345, 349; *Church* v. *Meeker,* 34 Conn. 421, 422; *Fitch* v. *New York, P. & B. R. Co.,* 59 Conn. 414, 422, 20 Atl. 345; *Merwin* v. *Morris,* 71 Conn. 555, 573, 42 Atl. 855; *Bernardo* v. *Hoffman,* 109 Conn. 158, 161, 145 Atl. 884; *Milardo* v. *Branciforte, supra.*

Inquiring as to the defendant's claimed superior right, the trial court found that it was impossible to determine that the north line of the highway extended to the section of the old stone wall. The defendant and his immediate predecessor, Stone, had not theretofore claimed the highway as the southern bound of the defendant's farm, and the court reached the conclusion upon the evidence that the defendant had not established title or possession to any land lying south of the present fence line, and accordingly ruled that in driving his cattle from that line across the intervening land to the present traveled highway, he had committed a trespass. In this connection also, we have examined the oral and documentary evidence which was before the trial court, and are satisfied that this conclusion is sound, and that none of the requested changes in the subordinate facts which we are at liberty to make, could change that ultimate fact. The controlling questions in the case resolved themselves into questions of fact, and for the reasons stated we find no error in the conclusion the trial court reached.

The always difficult task of establishing lost ancient bounds which was incident to the determination of this case, was not greatly aided by the regrettably

inconclusive evidence at the disposal of the trial court. The wise admonition of that court that the parties adjust this small matter in an amicable way between themselves, seems to have fallen upon deaf ears, and we have accordingly in detail and with care reviewed the entire record. We find no instance in which we can say there was a failure to find an essential fact or where the fact found was not reasonably supported by some evidence which the court was entitled to believe, or reasonably inferable from other established facts, and we regard the final conclusion as the only one which could reasonably have been reached.

There is no error.

In this opinion the other judges concurred.